Good morning. I'm sorry if I mispronounced your name, but I'm sure you mispronounced mine too. I've been called a lot worse, Your Honor. Good morning. May it please the Court, my name is David Romanofsky and I represent the petitioner, Richard Marvin Thompson. I would like to reserve three minutes for a rebuttal, please. Thank you. Your Honors, many courts have noted the incredible complexity of immigration laws. The Second Circuit Court of Appeals once said that immigration statutes are, and I quote, quote, certain to accelerate the aging process of judges. At first glance, Mr. Thompson's situation sounds fairly simple. He was a permanent resident of the United States. He was involved in a fight when he was a teenager. He was later convicted of second-degree assault in Connecticut, which served as the only basis for his deportation order. Now, he has obtained a full and unconditional pardon from the state of Connecticut for the only crime he has ever committed. Based on simple logic alone, since Mr. Thompson is no longer deportable, he should not be deported. Yet, almost two years after he obtained the pardon, the government continues to keep him in immigration detention in Alabama, while his parents, his children, his siblings, his cousins, his fiancée all live in the New York, Connecticut area, and threatens to deport Mr. Thompson to Jamaica, a country he has not lived in for the last 22 years. In order for Mr. Thompson to remain in the United States, this court has to make two findings. Number one, that this court has jurisdiction to review the agency's denial of Mr. Thompson's motion to reopen, even though the motion was of the sua sponte variety. And number two, that the agency committed an error of law when it held that Mr. Thompson continues to be deportable, because Connecticut pardons and only Connecticut pardons are not good enough, that they alone somehow do not satisfy the requirements of the pardon waiver clause under the Immigration and Nationality Act. With this court's permission, I will focus mostly on the jurisdictional piece and let the attorney general focus on the validity of Connecticut pardons under the federal law. Sua sponte motions are a special kind of motions to reopen. We're all in agreement that if this had been a regular statutory motion to reopen, the denial would have been entirely reviewable. This, on the other hand, was a sua sponte motion to reopen, which everyone agrees is highly discretionary. Interestingly enough, the board's decision denying Mr. Thompson's motion to reopen relies on its earlier precedent decision in matter of G.D. saying that sua sponte motions to reopen are reserved for, quote unquote, truly exceptional circumstances. They give the quote, sure. The government takes the position that they don't have to give any reason, and that if we get into this realm and reverse in this instance, their simple solution is just going to be they're going to deny it without giving any basis for the denial. I mean, how do you respond to that? Well, I find it troubling, Your Honor, to foresee a scenario where the government would purposefully avoid judicial review by simply not giving any rationale for their explanation. Yes, Your Honor, because if the government is presented with, in this case, an unconditional pardon which makes somebody not deportable, this is important enough for the board to either reopen the case or explain why somebody who is not deportable should still be deported. And the second, the third, and the ninth circuit, when they analyzed their jurisdiction to review legal and constitutional issues with sua sponte motions, the motion denials, they actually said that if it's unclear from the decision what the board relied on, it's proper to remand the case back to the agency to have the agency explain themselves, to make sure that the agency, while exercising its discretion, did not rely on an improper legal premise. We're not, just to confirm, we're not asking this court to review the discretionary determination by the BIA. We're asking this court to make sure that in exercising their discretion, they used the correct law, they applied the correct law, which in this case, we allege that they didn't. The discretionary nature of the agency's decision-making process doesn't mean that the court cannot look into whether the decision was based on a proper interpretation of the law. This court held in Tiquala v. Gonzalez that the government doesn't have the discretion to misinterpret the law. So the relief that you're requesting is vacating the current order and a remand for them to exercise discretion and make a further decision? That is correct, Your Honor. Based on the language of the decision, this court should find that the BIA, in exercising its discretion, relied on an incorrect interpretation of the law. So this court should send the case back to the BIA and order them to revisit the case and look at it from the correct legal angle. And I would respectfully suggest that in this case, the BIA should not have relied on an incorrect interpretation of the law. In the other cases where it was unclear what the BIA decision was relying on, here, everything is very, very clear. When presented with Mr. Thompson's pardon, the Board of Immigration Appeals, because of the significance of the event, the Board of Immigration Appeals felt compelled to produce a reasoned decision to explain why they're not accepting that as a pardon. And they explained it in a very detailed fashion, and they said that Mr. Thompson is not entitled to a pardon waiver. This is a clear legal issue. We're not asking this court to challenge the BIA's discretionary determination. We're asking this court to correct the incorrect legal standard that the BIA used in exercising their discretion. I certainly understand the challenge in other cases where it's unclear from the BIA's decision what they were relying on. But here, this court doesn't need to second guess what was going on behind the closed doors of the BIA reasoning, so to speak. It's right there in the decision. It's black and white. So Lewis, I would respectfully suggest, the Lewis case, which said that there is no jurisdiction to review sua sponte denials, is simply not applicable. Because Lewis and some other old circuit cases addressing the same issue dealt with situations where the court was tasked with reviewing the BIA's un-cabined discretion. This is not what we're asking this court to review. We're asking this court to review the legal principle, only and only the legal principle that the BIA got wrong. And not only is Lewis not on point, other courts have found that the Lewis line of cases has been superseded by the Real A.D. Act, and specifically the reference in 8 U.S.C. 1252 A to D about no jurisdiction for review of legal and constitutional issues. This court has not yet made a definitive ruling whether 1252 A to D serves as a jurisdiction restorer, so to speak. And the government argues that it doesn't, because the sua sponte motions are not in the INA, are not in the Immigration Nationality Act, so this provision doesn't provide jurisdiction. However, even if we adopt this very narrow reading of 1252 A to D, I respectfully suggest, as one of the circuit courts held, that the statute's recognition that legal or constitutional issues are reviewable even when a statute makes the underlying decision discretionary is reflective of the general principle that agency errors of law are always reviewable. This is the case in our legal system. And the government's position is that denials of sua sponte motions to reopen should never be reviewed, regardless of how legally wrong, unconstitutional, or nonsensical the BIA's decision might have been. We respectfully suggest that this is not a correct reading of the law. Thank you. The State of Connecticut supporting the petition, is it not? I think we will hear from you then at this time. Good morning, Mr. Chauvin. Good morning, Your Honor. Good morning, Your Honors. And may it please the court, I'm William Tong. I'm the Attorney General for the Amicus State of Connecticut. And I'm here this morning because the outcome of this appeal will have a profound impact on people living in Connecticut, including Mr. Thompson. The Board of Immigration Appeals wrongly decided that Mr. Thompson should be deported, even though the State of Connecticut has granted him a full, complete, and unconditional pardon that waives his deportation under the Pardon Waiver Clause of the Immigration and Nationality Act of 1952. The BIA is wrong for three key reasons. First, when it passed the Pardon Waiver Clause, Congress clearly meant to include pardons of the kind granted by the State of Connecticut, which are the kind of executive, discretionary, and individualized pardons sufficient to waive deportation under the law. Now, I understand... Yes, Your Honor. The statute limits itself to the President and the Governor. Do you think that was just drafting error, or do you think that was intended to be shorthand for executive action? Your Honor, I believe it was shorthand for executive action. Indeed, the Pardon Waiver Clause does say a pardon by a President or a Governor, but for over 60 years, the Board of Immigration Appeals and other authority has held that what the Pardon Waiver Clause really means is the President and the Governor, or executive action by a state. Now, the State of Connecticut vests its supreme pardon power in the Board of Pardons and Paroles, which 47 other states involve some kind of appointed board. Six states, including Connecticut, use a Board of Pardons and Paroles as the supreme pardoning power in a state. Now, in Connecticut, this is an executive branch agency, the Board of Pardons and Paroles. It is entirely appointed by the Governor. It is controlled by the Governor through the appointment process, and the agency, the Board, reports to the Governor administratively. The actions taken by the Board of Pardons and Paroles are completely discretionary and executive in nature and individualized. The pardon, if one earns a pardon, is the product of an exhaustive process. There are dozens of pages and interviews, and it takes almost six months to get a pardon. And in contrast to what are known now as legislative pardons, which are automatic and occur by operation of statute, Congress said in passing the INA in 1952, we don't mean those types of pardons. In the legislative history, it was very clear in referring to, quote, so-called legislative pardons that occur by operation of law. That's not what Congress meant when it passed the Pardon Waiver Clause. It meant executive, discretionary, individualized pardons. And that's why, again, for over 60 years, the Board of Immigration Appeals has held that Connecticut pardons and pardons like those granted by Connecticut, including Georgia, Alabama, and other states, are sufficient to waive deportation under the Pardon Waiver Clause. In fact... Is there anything in the legislative history that helps explain why they didn't express it that way? The only part of the legislative history that clearly addresses this issue is that language that refers to so-called legislative pardons that occur by operation of law. But it's pretty clear that Congress understood what it was talking about when it referred to so-called legislative pardons. And I think that's why the Board of Immigration Appeals, for almost discretionary executive pardon by a state not by the governor, qualifies for purposes of the Pardon Waiver Clause. It set forth that test in a case called Ainsilton-Murphy in 2002. And in fact, that case related to a Connecticut pardon. And in that case, the court said that there are three parts of the test for determining whether a board-granted pardon counts for purposes of the Pardon Waiver Clause. Number one, is it a full and unconditional pardon? Number two, does it come from the supreme pardoning power of the state? And number three, is it conferred by the executive through executive action? And all three of those elements are present here. There's no doubt, I don't think anybody contests, that Mr. Thompson's pardon is full, complete, and unconditional as far as the state of Connecticut is concerned. For all purposes, the fact that his criminal record has been erased in Connecticut. Second, the supreme pardoning power is vested in the Board of Pardons and Paroles in Connecticut. Nobody else has that power. Nobody shares that power. And number three, the pardon is conferred by an executive branch agency appointed by the governor. And it requires executive action, meaning somebody has to do something. Somebody has to make a decision. Who signs it? It is issued by the Board of Pardons and Paroles. Technically, I believe it is given under the signature of the chairman and the presiding officer of the board. So, referring earlier to the over 60 years of precedent that is summarized by the Ainsilton-Murphy case, there is case after case cited by the petitioners here and also by the state of Connecticut in which, starting as far back as 1954, the Board of Immigration Appeals has recognized that non-gubernatorial pardons count for purposes of the Pardon and Waiver Clause. Pardons in Georgia, pardons by a mayor in Nebraska, pardons by the U.S. High Commissioner for Germany, pardons in Alabama, which, by the way, are created much the same way as the was created. In Alabama, it is created by statute, and the governor appoints a board, and that board exercises the supreme pardoning power. In contrast, there are other pardons that have been held by the Board of Immigration Appeals to be ineffective because they're automatic, because they occur by operation of law, because they are, quote-unquote, legislative in nature. Louisiana pardons, for example, that occur by operation of law. Pennsylvania pardons, some of which occur by operation of law. I think that this line of authority is compelling, but it's not the end of the story. It's also important to note that this 60 years settled course of adjudication really demonstrates that the BIA has committed to this rule that pardons issued by the state of Connecticut and similar pardons from other states count for purposes of the Pardon Waiver Rule. And this circuit has held in the Davila-Bardalis case and also the Shaw's Supermarkets case that the BIA cannot blaze a new trail when it has settled on a course of adjudication for so long. And if an administrative agency like the BIA decides to depart significantly from its own precedent, it must confront the issue squarely and explain why the departure is reasonable. And as this court said in the Shaw's Supermarket case, the board may not depart from prior norms sub silentio and that there may not be a rule for Monday, a rule for deny relief outright in a specific case. I submit your honors that that's what's happening here. We have a settled course of adjudication for over 60 years and now the Board of Immigration Appeals using language from the Davila-Bardalis case is now zigzagging away from that 60 years of precedent without any explanation in the Thompson case. Let me close with my last couple of minutes here by saying I'm also here because to hold that Connecticut pardons do not count for purposes of the Pardon and Waiver Clause is to deny Connecticut the respect that it is entitled to under our constitutional system and to deny Connecticut would honor the equal sovereignty to which Connecticut is entitled to do otherwise and to recognize pardons in Georgia and Alabama but not Connecticut is to depart from our federal system really and to deny Connecticut equal standing with other states and the 49 other states whose pardons are effective under the Pardon and Waiver Clause. The U.S. Supreme Court and the Shelby County v. Holder case talked at length about the equal sovereignty principle and how important it is to honor the equal sovereignty of states like Connecticut vis-a-vis its sister states. In closing, Connecticut's also here because it cares very much about Connecticut residents like Mr. Thompson and ensuring that he receives the equal protection of the laws to which he is entitled. To treat Mr. Thompson differently because he was a Connecticut resident and received a Connecticut pardon when he would have been treated better if he were in Georgia or Alabama or New York is to deny him that equal protection. Thank you, Your Honors. Good morning, Your Honors. Jessica Burns on behalf of the respondent, the Attorney General. The court should find here that it lacks jurisdiction to review the board's unfettered discretion to deny sua sponte reopening. Years after receiving a final order of removal, which this court has upheld twice, Mr. Thompson stayed in the United States and was able to eventually benefit from a pardon from the state of Connecticut 16 years after his conviction. The board declined to exercise its sua sponte reopening authority, finding that Thompson failed to establish exceptional circumstances warranting the exercise of its unfettered discretion. Why is it a granting of a pardon in this case in exceptional circumstances as such? It's entirely up to the board's discretion and part of the reason that there shouldn't be jurisdiction to review it is there's no definition of what an exceptional circumstance is. The board can deny... I have a question more or less along the same grounds. Are you familiar with the law in Georgia? Yes, Your Honor. Is it correct that the board has held a similar law as that in Connecticut and Georgia to be an executive pardon? In Georgia, the power to pardon was granted to the governor who delegated his authority to the board of granted... A power is granted to the attorney general and the attorney general delegates that to the board of immigration appeals. It's still the attorney general acting and much like that where the governor delegates his power to a board of pardons, it is the governor acting. Here, the pardoning power was created by statute and Connecticut... Hasn't the board held in some cases involving Connecticut that this was an executive pardon? One unpublished case from 2002. Unpublished cases of the board are not precedential, number one. Number two, courts... To say one Connecticut resident has the benefit of your thinking and the other one doesn't. I think it's important to remember the context that this is coming up in. This is not a direct review of a denial of a pardon waiver, but rather the board's decision whether or not all of the circumstances present constitute extraordinary circumstances warranting reopening. And we don't know what other factors went into the board's exercise of discretion in this case or in that case in 2002, but even the courts that have found... We know what you said. We know what you decided to put in writing. Right, but the board doesn't have a duty in the sua sponte reopening context to articulate every reason. But even if the court were to find that it had limited jurisdiction to look for a settled course of action, the courts that have found that there is a jurisdictional exception for a settled course of action, which right now is only the Third Circuit Court of Appeals, have found that that is a very limited circumstance and one unpublished case or several unpublished cases do not constitute a settled course of action which would circumscribe the board's unfettered discretion. So the difference between the other case, that's the Edelstein case, and this is simply that one is published and the other one is not published? Both of these cases are unpublished, and so they're non-precedential. But the fact that the board found that that case warranted sua says nothing about the facts and circumstances and whether they are extraordinary in Mr. Thompson's case. We're not... It necessarily means that they found that this provision applied. When we're not asking the court to say that Connecticut pardons would never be sufficient for a pardon waiver, we're asking the court to hold that the board didn't abuse its discretion in declining to find extraordinary circumstances based on the facts of this case. This is not direct review of a pardon waiver. Extraordinary circumstances, but what aren't the extraordinary circumstances in this case, if... I mean, Mr. You treat two Connecticut citizens differently. Mr. Thompson, you know, waited 16 years to seek a pardon. He has stalled his immigration proceedings by filing several motions to reopen. I believe this is his third motion to reopen, all while waiting around to benefit for a pardon, and the ninth... But if we deem the legal basis for your reasoning incorrect, I don't understand why we... Even if the court were to find that it did have jurisdiction like the Second and the Ninth Circuits have found for a limited scope of determining whether or not there was a legal error, those courts have recognized, and this court should also recognize, that the remedy is to remand to the board to exercise its unfettered discretion under a correct legal reasoning. And even if the board were to deny reopening again based on a correct legal understanding, that decision would be unreviewable. And every court that has found jurisdiction over sua sponte reopening has accepted that principle, that if the board said, well, pardons in Connecticut are sufficient for a pardon waiver, but nevertheless, we declined to reopen our case. That is an unreviewable decision. We aren't there yet. No, and I think that that is... I think we should circle back to the point that there are really no meaningful standards to review what constitutes an exceptional circumstance, and so we shouldn't be... What about if we conclude that you, we, and apparently the state of Connecticut, conclude that you interpreted Connecticut law wrongly? Uh, the government's position is that that decision should still not be reviewable. Because the nature of sua sponte reopening, and the fact that there is no standard by which the board is required to reopen, is the type of situation, there's just no meaningful standards, the court shouldn't be interfering. And that shouldn't change based on the arguments that the alien presents, or the reasons that the board gives in denying reopening. To hold that would, first of all, render meaningless Congress's limits on motions to reopen. An alien could keep filing motions to reopen, and if they were able to eventually benefit from a pardon or a vacatur of their conviction, you're essentially holding the board has to reopen, despite the fact that there's no statutory or regulatory basis for the board to reopen. You have inconsistent arguments, because you just said a minute ago that you're not here that Connecticut's statutory regime does not satisfy the pardon waiver provision. But that is exactly what the board said. I'm not saying that it doesn't. I'm saying that that's not what we're asking the court to hold. We are looking at it from the context of, did the board abuse its discretion, or did the board commit some legal error? Error of law is always an abuse of discretion if we have jurisdiction. If you have jurisdiction, but if there's no meaningful standards by which to correctly exercise its discretion, the court shouldn't interfere, because the board can deny reopening, even if the aliens made a prima facie case for relief. That's clear in the regulations. Even if the board were to find, he's prima facie eligible for a pardon waiver, but yet we're still going to deny the pardon waiver, that's not reviewable. That's clear from the regulations, and this is the approach that the second, the seventh, the ninth circuits have all taken in the context of sua sponte reopening. This court has previously indicated that perhaps 1252A2D would apply to restore jurisdiction, but that statute has no bearing here where sua sponte reopening is governed by regulation, not by statute, and 1252A2D specifically applies to cases where the statute precludes jurisdiction. Sua sponte reopening, however, is non-reviewable, not because of the statute, but because of the nature of sua sponte reopening and the no reviewable standards to apply. But the fact that the motion implicates the legal question should not make it reviewable, and the Supreme Court recognized this in ICC versus Brothers Locomotive, basically describing what would be an absurd result if the decision is only reviewable if the agency discloses its reasoning. And in this case, if the board had said no exceptional circumstances period, I think that everyone would agree there is nothing for the court to review. The mere fact that they provided analysis for why they felt that their discretion was not warranted shouldn't change the result in the case. It's irrelevant that they kind of discuss the merits at length. But again, if the court were to find that there is a limited exception to see if the agency misperceived the legal background or exercised an error of law, the government contends that the board's holding in this case was correct and it is consistent with the plain language of the pardon waiver statute, which limits pardons for the purposes of the pardon waiver to presidential or gubernatorial pardons. And Connecticut does not contend. If Connecticut added one last step to its current regime and said that the governor has to sign the last document, would your argument be the same? That would be for the board to decide, not for me to decide. But that's not how Connecticut's current regime is. It is statutory. And if you look at the legislative history from the state of Connecticut, in 1818, they actually considered granting the pardon power to the governor and declined to do so because they purposely wanted it to be a power of the people. And they granted it to the legislature for that very reason. They wanted it to be subject to popular demand by electing their legislatures that would exercise its power. They wanted it to be different than how things operated under the crown, where the sovereign had that pardoning power. And the fact that they made that choice and continue to make that choice is, you know, it was their choice, but it makes it different than... How do you distinguish it from the case involving the pardon by the mayor? The pardon by the mayor. So the mayor, first of all, is an executive, the executive of the state, but also in that case... He's not the governor. Correct, Your Honor. But in that case, it wasn't a criminal statute. It was a civil infraction. And I explained that in our brief. But it was a violation of a city ordinance, which was a civil infraction, not a criminal offense. So it really is a different scenario. It was an offense that made the petitioner deportable. Correct. But I believe in that case, it was a removability for a crime involving moral turpitude. It didn't require a criminal conviction under the basis of removability. And this was back in 1958 when the grounds of removability were very different from what they look like today. So the mere fact, I mean, it's still the executive. And again, that's a city ordinance that was a civil infraction and not a criminal offense. In 1992, the Connecticut Attorney General, in fact, issued a letter to the governor. So if the governor signed the pardon, would that change your argument? Your Honor, that is for the Board of Immigrations to decide because the board... You're representing them? The board is entitled to deference. And the Board of Immigration Appeals is respectfully, actually not our client. We defend their decisions, but it's ultimately in their discretion and not for me to tell them. You're talking about Chevron deference? Correct, Your Honor. Why is the board entitled to Chevron deference on interpretation of Connecticut law? Because this isn't an interpretation of Connecticut law. Connecticut does not contest that theirs is a gubernatorial pardon. They freely admit it's a legislative pardon. We are interpreting the pardon waiver, which is part of the INA, which specifically limits pardons to pardons by the governor or president of the United States. And so the interpretation of that language is what's key. Does Connecticut's executive-like pardon count as a gubernatorial pardon? There's no question that the creation of the Connecticut Board of Pardons was a legislative creation that has existed in the state of Connecticut for 200 years. The question is, how do we interpret the pardon waiver in the INA? And the board is entitled to discretion in that realm. You've exercised your discretion in the way the petitioner is claiming, at least in one case, even though it's unpolished. Right. But a settled course of action requires citation in more than one unpublished case. When did you say that? The Third Circuit has recognized that. The Ninth Circuit. When in the First Circuit did we say that? This court has never recognized an exception for their settled course of action. But one unpublished case doesn't show that the board has circumscribed its discretion. Again, this is not the direct appeal of a pardon waiver, but we're looking at... It demonstrates arbitrariness. Excuse me. But the board has unfettered discretion in this realm, and the courts that have found an exception for this settled course of action said that the settled course of action has to be... Arbitrary discretion, like this. That the settled course of action has to be so enshrined that it actually limits the board's discretion. Again, we don't know the factors underlying, because the board had no duty to articulate every single reason for finding it wasn't an exceptional circumstance. And this is not the type of discretionary determination that the court should be weighing into and searching for reasons to find an abuse of discretion. The court has long held that there's no definition of exceptional circumstances. And the mere fact that his criminal conviction has been pardoned 16 years after the fact does not show that the board abused its discretion. And we're not asking the court to hold that Connecticut pardons would never suffice. And if this issue was on direct review, it might be a different result. But we're just asking the court to not invade the province of the board to exercise its discretion. Thank you, Kelsey. Before you sit down, we're not searching for reasons to do Yes, sir. Thank you. Is there any recording of any beautiful I don't know whose name I can't pronounce. Thank you, Your Honor. I have three brief points to make. Number one, the case that addressed the recent First Circuit decision that addressed the course of adjudication issue was Reyes v. Sessions, 2018 decision. In that decision, this court suggested that it may be possible to obtain jurisdiction based on settled course of adjudication even though there was no direct ruling on point. Issue number two, again, we're not asking this court to order the BIA to reopen as a matter of discretion. This is not what we're doing. We're asking this court to tell the BIA what the law is before they exercise their discretion. Yes, the BIA could have said we recognize the pardon, but we still deny the motion to reopen as a matter of discretion, except that it didn't. They said we're denying the motion to reopen because kinetic and pardons are not good enough. And even if it had done so, most circuit courts would send the case back to the BIA to clarify its reasoning because of the apparent departure from the BIA's settled course of adjudication and because they can't treat Citizen A differently from Citizen B. They can't treat Mr. Ainsley and Murphy different from Mr. Thompson when the fact pattern is virtually identical. And the board's decision in matter of GD, the one that Mr. Thompson's decision relies upon, talks about quote unquote truly exceptional circumstances. What the government fails to note is that in that decision, the board actually said if the person becomes clearly eligible for relief, this could be an exceptional circumstance. I would respectfully suggest that our case goes even further. Mr. Thompson does not need to apply for any relief from deportation. Mr. Thompson does not need to show that he is eligible for some discretionary benefit. His case simply needs to be reopened and terminated because he's no longer deportable. This is precisely the type of injustice that the sua sponte mechanism was designed to cure. Thank you.